This is the Court, Peter DeBruyne, for Petitioner. This case is very similar to the one we just heard. Petitioner, in this case, went to his merits hearing on the asylum case, and at that hearing, his counsel made an oral motion to withdraw the petitioner's petition. The immigration judge granted that motion and denied the petitioner's request for continuance to get new counsel, and proceeded on with the merits hearing, and ultimately ordered the petitioner removed. Petitioner contends that it was no fault of his own. He had no notice that his counsel was going to withdraw as attorney. There was no written motion. Local rules would provide that such a motion be in writing, so as to give notice to the interested parties, particularly the petitioner, and believe that the immigration judge abused his discretion by allowing his attorney to withdraw without any documentation or making any record or giving any notice to anybody that he tended to do this. And the petitioner was not able. Petitioner had a broken leg at the time. He was in a cast. He had been incapacitated for the previous two months. He spoke no English. And the only other continuance in the entire case was the first continuance at the notice to appear hearing, where everybody is given a right to an attorney, given 30 days to find one. He did find one. And then a year and a half transpired because the calendars in the immigration court are that long. So we believe that the fact that he didn't have an attorney prejudiced his case and he's not. What can you articulate the prejudice? The concern I have is that even if we, even if I agree with you that he should have been given a lawyer in light of his testimony what grounds does he have to demonstrate entitlement to asylum? Well, you know. What's a lawyer going to do for him now? He can't retract the testimony and say it's not true. But the test, I believe the testimony, if you look at the transcript of hearing, there's maybe 50 pages and maybe 15 of those pages have to do with his asylum case. Basically the petitioner was browbeaten. It's the same kind of case where the judge finds that he doesn't believe the fact that the petitioner says, I never received it. But that argument wasn't raised to the BIA, was it? Yes, it was. That the IJ abused the petitioner? I mean, the argument was he abused his discretion by not granting the continuance and he should have had counsel. It was brought up in the appeal to the BIA. Basically it was stated that I divided the transcript of the hearing into several phases. One had to do with the counsel's, the questioning of the counsel by the judge about why he was withdrawing. The next thing had to do with why the petitioner wasn't ready to go forward. And finally, there was a few pages on actual testimony. That was in the appeal to the Board of Immigration. Well, you know, the prior case, there was a problem in that the client didn't have the degree of contact with his lawyer that one would think a client would. He was hitting up and leaving and all of that. In this case, the petitioner, Hernandez, was trying to get a hold of his lawyer, if you believe him. Called him five times, I think it was. Spoke Spanish and didn't believe his lawyer spoke Spanish. But all he got was this fellow that was a representative of him, apparently of the lawyer, who told him, well, don't bother with the lawyer. We'll take care of it. Don't worry. So here you have a guy who's trying to get a hold of his lawyer but can't. Then the lawyer shows up at the hearing and the first thing the client knows is the lawyer wants to get out of the case. Well, frankly, he's been such a lousy lawyer, the client thinks, well, that's fine. It's all right. Get rid of him. I don't want him. Then the ALJ or the IJ says something about, well, we'll discharge the old lawyer and now do you want to go ahead or something like that? I forget exactly what it was, and that's crucial. We can look at that. But the client, Mr. Hernandez, at no time says I don't want a lawyer, and then later on in his testimony indicates he wants a lawyer. But the IJ is going forward with the hearing knowing this guy doesn't have a lawyer and that he wants a lawyer and there being no indication that the failure of the lawyer to be ready on the case or the lawyer wanted was any fault of this client's. That's kind of the capsules to your case. And so he'd say, well, then that was, he had ineffective assistance of the prior lawyer. He'd say, okay, that's fine. And then Judge Thomas says, well, in order for that to give him any benefit, you'd have to show some prejudice. Well, doesn't, you know, we don't know what a lawyer might do, but he might be able to tell a straight story and that was a problem here because this fellow didn't speak English, had an interpreter, and he couldn't tell a straight story. Well, Your Honor, what a lawyer might do in this case, he might file a supplement to the asylum application. It wouldn't be much to reconcile some of the inconsistencies. A lawyer, of course, would speak and ask appropriate cross-examination questions and direct questions to help reconcile that. Additionally, the harm done to a petitioner has got an adverse credibility ruling in his case, which could affect any further admissions into the United States. So that's an adverse effect on his case. Yes. He doesn't have to show that he would have won on the merits, but only that it had an adverse effect, according to what I read in the law. I think that's right. And no waiver was taken. And no waiver  The first party that Hernandez had contact with was a notary, huh? Filed this, what I guess has been referred to as a frivolous asylum application on his behalf. That was his first contact. According to the record, that's correct. It was an unsigned application for asylum that was prepared by a non-attorney. And then he got to McGuire, right? That's correct. We don't know how he got to McGuire, do we? It's not in the record, Your Honor. Not in the record. And McGuire has been disbarred. And then this February, yes. And last year, in May, he wasn't eligible to practice law. He was suspended, I believe. And then he wasn't eligible to practice law in September of 2001. Do you know about that? No, I'm not aware of that, Your Honor. Okay. And in May of last year, he stipulated before a California bar, a disciplinarian, disciplinary session to 28 counts of misconduct in 19 cases. Do you know about that? No, I didn't know about the proceeding, how many cases. I knew there were some big problems. I knew that this attorney was connected to other attorneys that had the same problem with the California State Bar with respect to these kinds of cases, asylum cases. And most of those counts involved failure to perform legal services competently. And he also admitted failing to inform clients of significant developments or refund unearned fees or to protect the attorney-client privilege. And he withdrew from representation without protecting his client's interests. You heard about that? No, Your Honor, I didn't read that record. It's all on the Internet. You know about the Internet. Yes, sir, I do. Yeah, okay. I might have read it, and I might not remember all the details, but I know that he failed to comply with Rule 995, and he was disbarred for that reason, finally. Okay. Thank you. May it please the Court, Dirk Phillips on behalf of Respondent. Let me say at the outset, I also was not aware of Mr. McGuire's disciplinary record that Your Honor just noted. Can I tell you something? Yes. There's one thing you've got to look at in these cases, because this is not uncommon. You know, it's not uncommon to have disbarred lawyers practicing before the Immigration Court. And the Immigration Court knows this. Did you know this? No, Your Honor, I did not. See, that's why they send you young, innocent guys over here, you know. Right. It neither... You know, ways, they just put in a lot of time, whatever they want, and they steer these folks to attorneys. And we're sort of walking a very tight line. But you see, tell you the way I look at it, the government is implicated in all this, because the government knows what's going on. You know, they know what's going on. Washington knows what's going on. As a matter of fact, you two guys are the first nice young lawyers that have come here that don't seem to know what's going on. Respectfully, Your Honor, and neither... You know, you get educated fast sometimes. Right. Neither Mr. Dugan nor I work in the Office of Immigration Litigation. We are in another litigating division of the Department of Justice, and we handle immigration cases from time to time as part of... What division is that?  Civil rights division. Yes, Your Honor. It must make you very uncomfortable to handle these things. Well, Your Honor, respectfully... Civil rights are not, they're not concerned too much here with them. And... Regardless of, if I may, Your Honor, regardless of... This guy, Thomas Fong, you know, he's a pretty rough character. Though now I understand he's the number two immigration judge in the hierarchy of over 500. So that's the way you get to be the ruler of the Queens and Ivy. Your Honor, just looking at the record of this case, I think it's important to note the time that... Putting Mr. McGuire's situation aside, I think it's important to note the overall circumstances in this case. This Court has held repeatedly that there are no bright-line rules, that each case must be dealt with on a case-by-case basis according to its own facts and its own record. The case, this case had been continued twice. There was the initial hearing where he, Petitioner, was informed of his right to counsel. He said he wanted counsel. He was given a month to obtain counsel. That's pretty automatic, isn't it, that that happens? I believe so, Your Honor. Yeah. So I don't see much to that. But it seems to me that then the hearing date gets set, and the only request for a continuance of the adjudication hearing, there was one request which was denied. That's what this case is about. At the second hearing, Your Honor, he does show up with counsel. He waited. At that time, through counsel, he waived reading of further rights. And that... That was a 30-day continuance to get counsel. Yes, Your Honor. Then they show up, and then they assign a hearing date. Right. So that's, no, that's not a continuance in my view at any particular time. Maybe it is. But it does sound like that's just sort of processing the case. Now, when it does come on for hearing, this fellow shows up. He's had an incompetent disbarred lawyer who was his attorney that he hasn't talked with. He's called the fellow, if you believe his testimony, that he tried on five occasions to call him. From the record, it looks like that probably happened. But you've got dealing with his del Toro or whoever it was, the individual that's kind of the front man for the lawyer? Well, let me, if I may, let me, if I may just step in, Your Honor. That is not the way I read the record. The way I interpreted the record is, and there is a colloquy between the judge and the lawyer on this issue, where the lawyer says he has absolutely nothing to do with this Alfredo Deltran. You're talking about this disbarred lawyer now? Yes, Your Honor. Okay. But just going on what's on the record, there is an exchange because first the petitioner says, I get off work at 3.30. I would try to call my lawyer approximately 4.30. I tried five times during this 18-month period. I didn't get anybody, and I didn't leave any messages. Then when pressed on the issue by the immigration judge, he changes his story somewhat and says, well, I didn't really have his phone number. I used this Alfredo Deltran, and this Mr. Deltran told me everything was taken care of, et cetera. The judge has an exchange with the attorney about this, and the attorney says, I have nothing to do with this Mr. Deltran. I don't, you know, I'm paraphrasing here obviously, but essentially disavows any contact or communication or relationship with this Mr. Deltran. At that point, the judge describes what he is hearing as, I mean, I believe he uses the phrase mutually, he is hearing essentially two mutually exclusive stories from the petitioner as to why they are not ready to proceed on the morning of the hearing. The first is, I tried five times over an 18-month period and didn't get anybody, and then the alternative story is, well, I didn't really have his phone number, but I tried to use this go-between, and then there is an exchange about that. And basically, I mean, what it comes down to is the immigration judge is faced with a situation where he has given them 18 months to prepare their case. They show up the morning of the hearing and are not prepared. And it's important to note that at that second hearing, which I understand Your Honor's point that that's just part of the process, but he is told at that time that that was, I believe, in April of 2001. He is told that his case is going to go forward approximately 18 months later in October of 2002 and that at that time he is expected to come forward with evidence and witnesses and that the evidence will be put on that day and that a decision will be reached at that time. Despite this, there is no contact, no effort to do anything to prepare going into. He's got a rotten lawyer. I mean, it's obvious at this point that that's, the guy had a stinker of a lawyer. He didn't do anything. Shows up at the hearing and wants to get out of the case. And this Judge Fong lets him out. Now, in any normal situation, I think a judge would say, well, okay, what are we going to do now? And the applicant would probably say, well, I'd like to have a lawyer and I need a continuance. He said, okay, we'll give you a continuance. You'll have an opportunity to have a lawyer and that will be fine. With respect, Your Honor, I think the way I read the transcript was that he shows that Mr. McGuire appears and says that his client no longer wants him to represent him. It wasn't that the lawyer was necessarily asking of his own accord to be released. The lawyer wasn't doing a thing. The lawyer had been informed by the client that he wanted to be, that he essentially was being dismissed, is the way I interpreted it. And so I think that is a slightly different situation from a lawyer just showing up and saying, I want out. He is essentially being asked, he is essentially being dismissed by his client on the morning of the hearing, despite the fact that they've been told that the hearing is scheduled for that day and is going to go forward on that day and they're to be prepared. And I think, you know, and again, none of this, I mean, I understand Judge Pragerson's point about the disciplinary history of this attorney. Like I said, I was not aware of that and that is not on the record to the best of my knowledge. But so I think we have to look at what the immigration judge knew on the morning. I know we do, but it seems to me that if your office knows now what we all know, why wouldn't you say, well, this guy ought to have a lawyer and let him have his hearing and maybe the lawyer can at least make an asylum application. He didn't even have that in his application. Again, Your Honor, I also think it goes back to the point that Judge Tallman raised with my colleague, and that is you have to look at also the merits of this case. Even if he is found to be credible, there's simply nothing in the record that would entitle him to asylum. He didn't have a lawyer that was willing or that was able and probably willing to help him with his story. So his story never got told. It's just a guy without a lawyer blurting out stuff. And, you know, that seems to me that that's a real problem. And in our country, we ought to give these people that are in this kind of a situation a chance to have a hearing. That's the way it looks to me. Again, to reiterate a point that my colleague made in the prior argument, we're looking at the record. We're looking at whether this was an abuse of discretion based on what the immigration judge. Well, you've got an asylum application that he signed in blank, so you can't really say that his testimony would differ from that. So any inconsistency in that regard I think you have to just put aside.  He doesn't speak English, so he's testifying through an interpreter. And he can't, he doesn't have a straight story. And a lawyer certainly could enable him at least to have a straight story and perhaps get away from an incredible finding by the trier of fact. But again, Your Honor, even if found credible, if you take what he has said, there's simply, I mean, his basis for asylum is the first thing he mentions is economic problems. You have to have a lawyer try to help him out and get him to recall what these things were and to present a good case, you know. You get clients that come in to see you in your office, and you've got to help them sometimes to remember what's going on. I see my result there. And you're probably thinking, what's the use? I've got a judge here who doesn't want to go along with me. But I'm just wondering, it seems to me that the administration, when it finds out something like this, would say, hey, this is a case where this guy ought to have his hearing. And, you know, maybe he can't show anything, but at least he could have a hearing with a lawyer. But is there anything you can do about that to talk to your superiors? I can certainly, when I return, I will not, when I get back to Washington, I can certainly notify the Office of Immigration and Litigation of Your Honor's point. I mean, standing here, I don't have the authority to represent anything other than what I've said and what's in the brief in this case, Your Honor. Okay. Well, I'm not asking you to do that. I just wondered about it. Thank you. Thank you, Your Honor. You're a good lawyer, and you're right. You just look at the record and, well, you made a good argument. Thank you, Your Honor. Yeah, you did a good job. And we appreciate it. Thank you, Your Honor. All right. This matter is submitted. And the other two cases, Galt v. City of L.A., and one's got Theresa Galt, and the other is Lisa Galt. And they're submitted, too. You're going to hardly wait to get out of here. Where are you going? Probably to the coffee urn. I don't know. He had to go to the bathroom. All rise. This court for this session stands adjourned. Sit down, please. We still stand. Thank you. Thank you.
judges: Pregerson, Thompson, Tallman